### JOSEPH VOGEL *vs.* D. M. OSBORNE & Co.

#### February 1, 1886.

**Agreement to return Notes on Breach of a Warranty—Damages.—**
Plaintiff alleges that, defendant holding a disputed claim against him, they made a settlement thereof, as the result of which plaintiff gave defendant two notes, upon defendant's agreement "to refund the receipts of settlement," *i. e.*, the two notes, upon breach of a certain warranty; that the warranty was broken, and due demand made for the notes, with which defendant failed to comply. *Held*, that upon this state of facts, in an action upon the agreement to refund, plaintiff is entitled to nominal damages, but not to substantial damages, unless he paid the notes before, in the exercise of reasonable diligence, he discovered the breach of warranty, or unless, being negotiable, they were before maturity indorsed to a *bona fide* holder.

The amended complaint sets out the following facts, viz.: About July 1, 1881, the defendant, a corporation, sold to plaintiff a harvester and binder warranted to be properly constructed and to do good work. The machine, though properly tried and tested, failed to do good work, and was not as warranted. Thereafter the plaintiff and defendant entered into the following agreement in writing, (Exhibit A,) viz.:

"FERGUS FALLS, MINN., Dec. 5, 1881.

"This is to certify that, whereas, Mr. Joseph Vogel has made full and complete settlement for the Osborne self-binder sold him last fall, he is to have a new binder for 1882; the same is hereby warranted to do perfect work, or, if not, we agree to refund the receipts of settlement.                    EARL & HANSON,

"General Agents of D. M. Osborne & Co."

Upon the making of this agreement, the plaintiff paid the price of the machine, $320, by giving his two notes, each for $100, due respectively in one and two years, and by assigning an account for $120

which plaintiff held against one A. G. Kinney, and which has since been paid by Kinney to defendant. Before the maturity of the notes, defendant sold and transferred them to third persons, and plaintiff paid them prior to the last trial of this action. In 1882, defendant furnished plaintiff with another binder, which would not and could not be made to do good or satisfactory work, and was utterly worthless. Plaintiff duly notified defendant of the failure of the binder to work, and duly demanded that defendant refund and pay plaintiff all that he had paid for the machine, which demand was refused. The complaint asks judgment for $320, with interest from December 5, 1881.

The answer denies that defendant ever sold a harvester or binder to plaintiff, and alleges that plaintiff bought the harvester and binder in question from one A. G. Kinney; denies that defendant ever had any business transactions with either plaintiff or Kinney; admits, on information and belief, that a new binder was in 1882 given to plaintiff, but alleges that the same was given by Earl & Hanson, without consideration, and without any warranty, or any power or authority to warrant the same for this defendant, but solely for the purpose of establishing and improving the business and credit of said Earl & Hanson in the plaintiff's locality. The answer further alleges that the machine bought by plaintiff was well built, of good material, and capable of cutting, if properly managed, from ten to fifteen acres per day, and contains a general denial of the allegations of the complaint except as admitted.

The action was tried in the district court for Otter Tail county, before *Collins,* J., and a jury, and plaintiff had a verdict for $241.34. Defendant appeals from an order refusing a new trial. The decision of an appeal on a former trial of this action is reported in 32 Minn. 167.

*A. B. Jackson,* for appellant.

*J. W. Mason,* for respondent.

BERRY, J. After a careful reading of the settled case before us, we adopt as appropriate to this appeal the substance of a conclusion arrived at upon the former appeal, (32 Minn. 167,) viz., that there was evidence sufficient to warrant the jury in finding that Earl &

Hanson were defendant's agents to sell the Osborne machines, with authority to give both of the warranties set forth in the complaint, and to employ canvassers to solicit orders and make sales; and that Kinney made this sale as canvasser of Earl & Hanson, and in defendant's behalf. To this we may add that the evidence in the case at bar was sufficient to warrant the jury in finding that defendant, through its said agents, made the original warranty upon the sale of the machine, and also the warranty (Exhibit A) upon which this action is based; that the latter was founded upon a sufficient consideration, viz., the settlement therein mentioned of the plaintiff's claim on account of the breach of the original warranty; and that the second warranty has been broken, so as to entitle plaintiff, upon proper demand, to the refunding of "the receipts of settlement" therein mentioned. We are also of opinion that there was competent evidence from which the jury was warranted in inferring that the two notes given by plaintiff, upon the execution of Exhibit A, were, as between plaintiff and defendant, "receipts of settlement," within the meaning of the exhibit, and that the plaintiff is entitled to the refunding of the same. We shall not enter into details of evidence for the purpose of justifying these conclusions, but with reference to the authority to warrant, we cite *McCormick* v. *Kelly*, 28 Minn. 135; *Deering* v. *Thom*, 29 Minn. 120; *Flatt* v. *Osborne*, 33 Minn. 98.

There is nothing in this case to show that this presumed authority to warrant was qualified by the communication of any express limitation of it (if any there were) to the plaintiff; and a like remark is applicable to the taking of the notes by Earl & Hanson in *settlement* with the plaintiff, and to the conclusion that, as so taken, the jury was at liberty to find that, as between plaintiff and defendant, they were "receipts of settlement," received by defendant through its agents, Earl & Hanson.

This is an action upon the defendant's alleged agreement in Exhibit A to refund "the receipts of settlement," if the new binder therein agreed to be furnished did not work as warranted. As was properly held by the court below, the only "receipts of settlement" of which there was evidence were the two notes given by plaintiff upon the

execution of this exhibit. Now, upon non-compliance with his proper demand (of which there was evidence) for the return of the notes, if the jury found the other material facts in his favor, (as the verdict shows,) the plaintiff was entitled to at least nominal damages. But the verdict was for the *full amount* of the notes. For this result we are unable to discover any foundation in the evidence. According to the testimony, the notes were paid by plaintiff to the First National Bank of Fergus Falls shortly after the former trial of this action. There is nothing in the case showing that they were negotiable. The evidence, as far as it shows anything, tends to show that they were not. Neither is there any evidence that they were indorsed or otherwise transferred to the bank, or to any one. Had they been paid before the plaintiff, in the exercise of reasonable diligence, had discovered the breach of the warranty found in Exhibit A, there would be no doubt of the plaintiff's right to recover their full amount, if the other material facts of a case were with him. But so far as the evidence discloses, the plaintiff had a complete and perfect defence to the notes in whatsoever hands they might be found. Indeed, for aught that appears, they were at the time he paid them the property of the defendant or its agents by whom they were taken.

Now, upon defendant's refusal to refund the notes to plaintiff upon proper demand, his remedy, as sought in this action, is for the damages resulting from the breach of the contract to refund. The consequences of this breach were that the notes were left outstanding against the plaintiff, and he was in danger of being sued upon them. Now, so long as he had a perfect defence to them, no matter whose hands they came to,—so long as he was in fact under no *legal liability* on account of them,—how can he be said to have suffered any substantial damage from the refusal to return them? And if, notwithstanding he is not liable upon the notes, he sees fit of his own motion to pay them, how can that be said to be anything more than his own voluntary and unnecessary act?—in effect a pure gift to the holder of the notes, and not in any legal sense the consequence of, or damage resulting from, the refusal to refund them according to agreement. In our opinion, therefore, the evidence does not sustain the verdict, and there must be a new trial.

We may add that if the notes were negotiable in form, but had not been indorsed before maturity, they would stand upon the same footing, as respects plaintiff's right of defence, as if non-negotiable; and, on the other hand, if being negotiable they were duly indorsed before maturity, the plaintiff could not set up his defence against a *bona fide* indorsee; and hence, with or without payment of them, he would be entitled to recover their full amount of defendant, if the other facts material to his recovery were found in his favor. We conjecture that the charge of the court proceeds upon the basis that the notes were negotiable promissory notes, properly indorsed before maturity. If, upon a new trial, this should turn out not to be the fact, (as the evidence in the present case does not show it to be,) the charge will evidently require some modification to harmonize it with the foregoing views.

As to the other matters suggested by defendant's counsel, we discover no error sufficiently substantial to require special notice in this opinion.

Order reversed and new trial directed.